### SHANLEY et al. v. BOWERS.
#### No. 177.

Circuit Court of Appeals, Second Circuit.
Jan. 13, 1936.

Lamar Hardy, U. S. Atty., of New York City (Elizabeth Rogers Horan, Asst. U. S. Atty., and William F. Young, Sp. Asst. to the U. S. Atty., both of New York City, of counsel), for appellant.

Douglas & Armitage, of New York City (Paul Armitage, Edward Holloway, and William C. Shanley, Jr., all of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This appeal presents a controversy relating to the income tax liability for the calendar year 1922 of William C. Shanley, who died on December 28, 1922. On the merits the question is whether certain moneys received and expended by the trustee of a trust created by Shanley were properly treated as part of Shanley's gross income for the year 1922. In addition, the defendant contends that an escrow agreement dated February 5, 1928, is a complete defense to the plaintiffs' action. The latter question, which apparently was the only one controverted in the District Court, may conveniently be disposed of first.

In March, 1923, the executors of the deceased taxpayer filed an income tax return, including as gross income of the decedent for 1922 the items now in dispute, and paid part of the tax liability disclosed by the return. Before any further payment was due, they filed an amended return excluding the disputed items, and filed claims for abatement and credit. The Commissioner disallowed their claims in the main, issued a certificate of overassessment in the sum of $145.61, and determined the tax at $26,065.61. The executors then appealed to the Board of Tax Appeals, but their petition was dismissed for lack of jurisdiction. Shanley v. Commissioner of Internal Revenue, 7 B.T.A. 521. This decision was affirmed by this court in Shanley v. Commissioner, 28 F.(2d) 1018. While the appeal was pending here, the executors deposited securities in escrow to assure to the collector, upon the terms stated in an escrow agreement dated February 5, 1928, payment of the disputed taxes. After the decision of this court, the collector of internal revenue demanded payment, and the executors paid under protest the balance

of the 1922 taxes, amounting, with interest, to $19,896.24. They filed a claim for refund which the Commissioner rejected, and on June 22, 1931, the present action was instituted against the executor of the deceased collector to recover this sum.

It is the defendant's contention that the escrow agreement obligated the executors to pay the 1922 taxes as previously determined by the Commissioner, on condition that the appeal pending in this court should be decided in the Commissioner's favor; that it was so decided, and consequently the payment subsequently made to the collector was a performance of the executors' contract obligation and is not recoverable, even if the tax liability was wrongly determined. In support of his position the defendant cites United States v. John Barth Co., 279 U.S. 370, 49 S.Ct. 366, 73 L.Ed. 743; Gulf States Steel Co. v. United States, 287 U.S. 32, 53 S.Ct. 69, 77 L.Ed. 150; Simmons Mfg. Co. v. Routzahn, 62 F.(2d) 947 (C.C.A.6); United States v. Martin Hotel Co., 59 F.(2d) 549 (C.C.A.8); Mascot Oil Co. v. United States, 42 F. (2d) 309 (Ct.Cl.), affirmed 282 U.S. 434, 51 S.Ct. 196, 75 L.Ed. 444. But the argument is based on an erroneous construction of the escrow agreement. The true construction makes inapplicable the authorities relied upon. After reciting the issuance of a warrant for distraint which the collector is threatening to enforce, the escrow agreement declared that the executors have deposited bonds with the depositary to assure to the collector payment of the income taxes for 1922, "should the appeal now pending * * * be finally determined in favor of the Commissioner." It provided that, "if upon final judgment" the executors shall fail to pay "the amount found due by such final judgment," then, upon receipt from the collector of "a Certificate showing the amount due on such tax as so decreed," the depositary will deliver the securities or pay "the amount equal to the amount of the tax found due with interest or penalties as certified." These provisions show clearly that the condition of any obligation to pay under the escrow agreement was the rendition of a judgment finding the amount due, not the mere affirmance of the Board's decision that it lacked jurisdiction. Hence Judge Caffey was entirely right in holding that the escrow agreement was no bar to the plaintiffs' action for recovery of an illegal tax, and we may proceed to the merits of the controversy.

[2, 3] Under the terms of a testamentary trust created by his father, William C. Shanley was entitled to receive one-fourth of the annual income and, upon the death or remarriage of his mother, one-third of the corpus of the trust estate. In 1910 he conveyed his interest under his father's will to the Empire Trust Company upon trust to pay out of the income received by it $25,000 a year to the settlor's wife, and to pay the rest of the income and the principal, when received, to the holders of certificates of participation which were issued to creditors of the settlor. By an agreement dated January 5, 1914, the trust was extended to cover an additional series of certificates of participation issued to creditors. The agreements authorized the trustee to retain its reasonable fees and expenses out of moneys coming into its hands. When all certificates of participation should be paid in full, the trust was to end and the trustee was to reassign to the settlor the property held in trust. The settlor could end the trust at any time by paying all outstanding certificates of participation or depositing with the trustee sufficient money to redeem them. Out of the income collected by the trustee in 1922 it paid $25,000 to the settlor's wife and another sum (the exact amount of which does not appear) it retained for its fees and expenses. These two sums were included in the gross income of the settlor, and the validity of the assessment resulting therefrom is the matter in controversy. The action does not involve any sums paid by the trustee to the settlor's creditors; they are conceded to have been part of his income.

It is argued that the fact that the settlor could terminate the trust by paying off the certificates of participation made the trust income his. Under the Revenue Act of 1921, 42 Stat. 227, there is no clause such as appears in section 219 (g) of the Act of 1924, 43 Stat. 277 (26 U.S.C.A. § 166 note) and later acts, declaring that the income shall be the settlor's if he reserves a power to revoke the trust. But, if it be assumed that without express provision the same result should follow under the act of 1921, the defendant's argument cannot prevail. Under the general law in most states, any settlor, if he is able to purchase the interests of all the beneficiaries of a trust, can bring about the termination of the trust; but the possibility that he may do so (if he has sufficient money) is not such a power to revest the property in himself as to make the income his. Compare Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. —— (Nov. 11, 1935). He does not have "unfettered command" over the income, as in Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916. At most it is a power conditioned on an event which may not be within the settlor's ability to perform. No authority suggests that a power of revocation so conditioned should have the effect contended for by the defendant.

The further argument is urged that the provision for the settlor's wife was in discharge of his marital duty to support her and so within the principle of Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L. Ed. —— (Nov. 11, 1935) and other recent decisions following it. Helvering v. Schweitzer, 296 U.S. 551, 56 S.Ct. 304, 80 L.Ed. —— (Dec. 9, 1935); Helvering v. Stokes, 296 U.S. 551, 56 S.Ct. 308, 80 L. Ed. —— (Dec. 9, 1935). But the trust instrument says nothing about discharging such marital duty, nor is there any outside evidence of the settlor's intention to do so. Certainly a man must be able to make his wife a gift, if he wishes, without affecting his marital duty. No authority has been cited for the theory that every gift by a husband to his wife must be presumed to be in discharge of it. Nothing short of this will suffice to sustain the contention in the case at bar.

Finally, it is urged that the settlor's conveyance was an assignment of income to fall due in the future and governed by such cases as Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Mitchel v. Bowers, 15 F.(2d) 287 (C.C.A.2) and Dickey v. Burnet, 56 F.(2d) 917 (C.C.A.8). But none of the cases holds that an owner may not assign outright any interest recognized as existing property. The contrary is true. Commissioner v. Field, 42 F.(2d) 820 (C.C.A.2). The settlor's interest in the trust set up by the will of his father was certainly a transferable property interest, and the income collected by the transferee was in no degree dependent upon continued activities of the transferor. This court has already intimated that only in the latter event is an assignment of income to accrue in the future ineffective to make the income the assignee's. See Lowery v. Helvering, 70 F.(2d) 713, 714 (C. C.A.2); Rossmoore v. Commissioner, 76 F.(2d) 520, 521 (C.C.A.2).

The question as to inclusion of fees and expenses retained by the trustee might raise

a question of some doubt if properly before us. It may be that 'they are colored by the purposes of the trust, and, since part of those purposes were to pay the settlor's creditors and the income so used must be deemed his, that a portion of the trustee's fees and expenses should likewise be treated as income to him. But the question need not be now decided. It is not raised by the assignment of errors, nor was it noticed on the trial. Moreover, the parties agreed below as to the amount of the tax in dispute. In response to a question by the court as to the amount recoverable if anything was recoverable, the plaintiffs' counsel said that the parties could agree. Thereafter, in the presence of the court, the defendant's counsel conceded that the amount involved was $19,898.24; judgment was entered for that sum and interest from the date of payment. It is too late to disaffirm that concession now.

This disposes also of the supposed mathematical errors in the amount of recovery suggested for the first time in the appellants' reply brief. We have no way of ascertaining the proper amount from the record; and no reason is apparent why the defendant should not be bound by a concession of the amount due.

Judgment affirmed.